EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>    Recurrido<br><br>          v.<br><br>José de Jesús Delgado<br>    Imputado–Peticionario | Certiorari<br><br>2001 TSPR 176<br><br>155 DPR \_\_\_\_ |

Número del Caso: CC–2001–273


Fecha: 20/diciembre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                        Hon. Jorge L. Escribano Medina


Abogado de la Parte Peticionaria:
                        Lcdo. José Ramón Ríos Pérez


Oficina del Procurador General:
                        Lcda. Luisa Virginia Fuster Berlingeri
                        Procuradora General Auxiliar

                        Lcda. Mayra J. Serrano Borges
                        Procuradora General Auxiliar


Materia: Infr. Ley 141

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                  CC-2001-273      CERTIORARI

José de Jesús Delgado

    Imputado-Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 20 de diciembre de 2001

El peticionario, el Sr. José de Jesús Delgado, recurre ante este Tribunal, vía certiorari, en solicitud de que revisemos una sentencia del Tribunal del Circuito de Apelaciones, la cual revocó una resolución del tribunal de primera instancia que declaró con lugar una petición del Sr. de Jesús para impedir que se le permitiera a su esposa declarar como testigo de cargo en su contra, al amparo del privilegio concedido en la Regla 27 (B) de Evidencia, 32 L.P.R.A. Ap. IV.

**I**

El 19 de noviembre de 1999, el peticionario de Jesús Delgado, mientras conducía un vehículo de

motor de su propiedad, impactó a un peatón, el Sr. Celedonio Rivera de Jesús, ocasionándole la muerte.

El 16 de noviembre de 2000, la esposa del peticionario, la Sra. Yahaira Rodríguez Jiménez[1], compareció a la fiscalía de Caguas y, como alegado <u>testigo ocular</u> de los hechos, prestó dos (2) declaraciones juradas sobre los mismos ante un representante del ministerio fiscal. Al día siguiente, el 17 de noviembre de 2000, el ministerio público presentó sendas denuncias contra el peticionario por alegadamente haber infringido el Artículo 87 del Código Penal, 33 L.P.R.A. sec. 4006 --imprudencia crasa y temeraria al conducir vehículo de motor-- y por violar la Sección 4.102 de la Ley 141 de Vehículos y Tránsito, accidentes en que ocurren muertes. En las denuncias, se le imputó que, al conducir su vehículo a una velocidad exagerada, impactó a la víctima, provocándole la muerte en el acto, y que abandonó el lugar del accidente.

En la vista de determinación de causa para el arresto, celebrada ese mismo día, la Sra. Yahaira Rodríguez Jiménez, como testigo de cargo, declaró como testigo ocular de los hechos[2]. Así las cosas, el 9 de enero de 2001, <u>al ser llamado el caso para la celebración de la vista preliminar</u>, la representación legal del peticionario planteó que la Sra. Rodríguez Jiménez <u>estaba impedida</u> de testificar por razón del privilegio entre cónyuges. El ministerio público objetó dicho planteamiento, arguyendo que la esposa renunció al mismo cuando voluntariamente declaró sobre los hechos durante la etapa investigativa del caso y en la vista de causa para el arresto.[3] Igualmente, sostuvo el ministerio fiscal que el contenido de

---

[1] El Procurador General se refiere a la esposa del Sr. De Jesús en su Escrito Para Mostrar Causa con el nombre de Yahaira. Según consta en la Petición de Certiorari del recurrido, y en la sentencia del tribunal apelativo, éstos se refieren a ella con el nombre de Yahaira.

[2] No surge del expediente si, en dicho día, el aquí peticionario estuvo presente en dicha vista como tampoco que, de haberlo estado, estuvo representado por abogado.

[3] Esta declaró voluntariamente sobre los hechos acontecidos en tres (3) ocasiones anteriores a la vista preliminar. Es decir, ella prestó dos (2) declaraciones juradas sobre los hechos al fiscal durante la etapa investigativa del caso y, luego, testificó en la vista de determinación de causa para arresto, dónde compareció como testigo de cargo.

su declaración versaba sobre hechos de su propio conocimiento y no era el producto de comunicaciones confidenciales entre cónyuges.

El 9 de enero de 2001, el Tribunal de Primera Instancia, Subsección de Distrito, concluyó que la Sra. Rodríguez Jiménez no podía declarar como testigo de cargo, por virtud del privilegio consagrado en la Regla 27 (B) de Evidencia, ante, y reseñaló la vista preliminar para el 15 de febrero de 2001.

Inconforme, el Ministerio Público presentó una petición de certiorari ante el Tribunal de Circuito de Apelaciones, solicitando la revocación del dictamen de instancia. Mediante sentencia de 15 de febrero de 2001, el tribunal apelativo intermedio revocó la resolución del tribunal de instancia por entender que el privilegio de la Regla 27 (B) de Evidencia, ante, no cobijaba a la esposa del aquí peticionario; sostuvo el foro apelativo intermedio que, al voluntariamente haber prestado declaraciones sobre los hechos del caso, en tres ocasiones anteriores, la esposa había renunciado expresamente a dicho privilegio, ello al amparo de las disposiciones de la Regla 33 de Evidencia, ante.

Inconforme, José de Jesús Delgado, acudió ante este Tribunal señalando que el Tribunal de Circuito había errado:

> "...al resolver que la esposa del recurrente al declarar en tres (3) ocasiones había renunciado en forma expresa al privilegio marido-mujer consagrado en la Regla 27 (B) de las de Evidencia."

Mediante Resolución de fecha 4 de mayo de 2001, le concedimos el término de veinte (20) días al Estado para mostrar causa por la cual no debíamos revocar la sentencia dictada por el foro apelativo. El Procurador General de Puerto Rico compareció en cumplimiento de dicha Resolución. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## II

La Regla 27 de Evidencia, ante, establece y regula dos (2) modalidades del privilegio marido-mujer: a saber, (1) la regla de exclusión de

**comunicaciones confidenciales** entre los cónyuges y (2) la regla de exclusión mejor conocida como <u>la doctrina de incapacidad testifical o competencia testifical</u>. El privilegio pertinente en el caso de autos es precisamente el segundo, el cual se encuentra consagrado en el Inciso (B) de la citada Regla 27, que establece, en lo pertinente, que: "Un cónyuge no podrá ser obligado a testificar a favor o en contra del otro".

La Asamblea Legislativa adicionó este privilegio específico de "<u>incapacidad testifical</u>" al proyecto original sobre las nuevas Reglas de Evidencia del 1979, propuesta por este Tribunal, por razones de política pública y para conservar la institución del matrimonio. <u>Pueblo en Interés del Menor L.R.R.</u>, 125 D.P.R. 78, 84 (1989). La enmienda introducida y aprobada por la Legislatura, mediante el Inciso (B) de la mencionada Regla 27, <u>tuvo el efecto de alterar o cambiar la norma que regía en cuanto a cuál de los cónyuges era el poseedor del privilegio</u>. Es decir, bajo el derogado Código de Enjuiciamiento Civil, el tenedor del privilegio lo era el cónyuge, quien era parte en el pleito, y no el cónyuge que era testigo.[4] En relación con esta situación en particular, bajo la antigua doctrina, el acusado podía impedir que su cónyuge testificara en su juicio, aun cuando ese cónyuge-testigo quisiera testificar. De hecho, constituía error admitir el testimonio de la esposa del cónyuge-acusado sin el consentimiento de éste. <u>Pueblo</u> v. <u>Medina</u>, 32 D.P.R. 151 (1923).[5]

En resumen, mediante la adición realizada se <u>cambió</u> el enfoque en cuanto a quién es el poseedor del privilegio y a quién le corresponde invocar el mismo. <u>Al igual que en la esfera federal, la doctrina de la "incapacidad testifical" evolucionó y se bifurcó del privilegio de "comunicaciones confidenciales" entre cónyuges</u>. En este sentido, nos apartamos de la norma o modalidad sobre el privilegio de "comunicaciones

---

[4] El Artículo 402 del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. sec. 1734, rezaba: "Un marido no podrá ser examinado a favor ni en contra de su mujer, sin el consentimiento de ésta, ni una persona a favor ni en contra de su marido, sin el consentimiento de éste."

[5] Ernesto L. Chiesa, <u>Tratado de Derecho Probatorio</u>, República Dominicana, Ed. Corripio, 2000, Tomo I, Sec. 4.8., 268.

confidenciales", la cual <u>impide</u> a cualquiera de los cónyuges —testigo o parte— de declarar sobre las comunicaciones sostenidas durante el matrimonio y que cualquiera de ellos —testigo o parte— puede invocarlo por derecho propio, <u>aún después de terminado o disuelto el mismo</u>, ya que éstas gozan de una garantía de confidencialidad.

Los sucesos percibidos por el cónyuge-testigo, sin embargo, <u>no</u> tienen garantía alguna de privacidad o intimidad y, por lo tanto, <u>no</u> atienden los mismos fines o propósitos de salvaguardar la comunicación abierta entre cónyuges dentro del núcleo matrimonial. Se entendió que, en lugar de impedir el testimonio del cónyuge-testigo por el cónyuge-parte, <u>era mejor norma y práctica dejar la decisión de testificar o no al cónyuge-testigo</u>. Dicho de otra manera, en cuanto al Inciso (B) de la Regla, se abandonó la vieja norma para hacerla potestativo del cónyuge-testigo declarar, o no, en contra de su cónyuge.

Lo que se pretende fomentar es que el cónyuge determine libremente si va a testificar o no va a testificar. Una vez el cónyuge decide testificar, el otro cónyuge no puede impedirlo como ocurría con la vieja norma sobre el privilegio, pero si el cónyuge no desea testificar y no aplica ninguna de las excepciones a la regla que se encuentran en el inciso (D), el Tribunal no puede obligarlo."[6] Rolando Emmanuelli Jiménez, <u>Prontuario de Derecho Probatorio Puertorriqueño</u>, República Dominicana, Ed. Corripio, 1994, pág. 241.

El Profesor Chiesa, ante, págs. 269-270, elabora:

> El privilegio es del cónyuge-testigo, no del cónyuge-parte. Si el testigo prefiere proteger su matrimonio y no declarar, no puede obligársele. <u>Pero si prefiere declarar, el cónyuge, parte de la acción, no puede impedirlo.</u> Bajo esta Regla 27 (B), si el cónyuge-testigo opta por declarar, no puede negarse a contestar preguntas cuya respuesta perjudique al cónyuge. El testigo tiene la opción de declarar o no declarar, pero no puede selectivamente elegir qué contesta y qué no contesta. De ordinario, el testigo sabe si su testimonio ha de ser favorable o adverso al cónyuge,

---

[6] Bajo las excepciones del Inciso (D), no aplica el privilegio cuando existe una acción civil entre cónyuges; cuando un cónyuge es acusado de un delito contra el otro cónyuge, su propiedad o hijo de cualquiera de ellos; cuando un cónyuge es acusado de un delito contra la persona o propiedad de un tercero mientras cometía un delito contra la persona o propiedad del cónyuge; o, en casos de bigamia, adulterio o abandono de menores o incumplimiento de la obligación alimentaria con un hijo de cualquiera de los cónyuges.

y tiene elementos de juicio para decidir si se acoge al privilegio o declara. (Énfasis suplido.)

Es evidente que, como cuestión de política pública, si un cónyuge está dispuesto a declarar, <u>ni</u> el Estado, <u>ni</u> la parte adversamente afectada, puede impedírselo. El cónyuge-testigo es el que posee los elementos de juicio para evaluar y sopesar los intereses envueltos y las posibles repercusiones de su testimonio para entonces decidir si quiere testificar o no. Asimismo nos informe, adicionalmente, el Prof. Chiesa:

> A mi juicio, la cuestión de política pública está clara. Si una persona está dispuesta a testificar contra el cónyuge, el Estado no puede impedirlo. El testigo ha hecho la correspondiente evaluación o balance de intereses entre proteger el aparente deteriorado matrimonio, y su obligación de testificar verazmente. Pero si el testigo prefiere no testificar contra el cónyuge, el Estado debe proteger tal elección. No veo justificación utilitaria —ni de otra índole— para conceder a una persona el privilegio de impedir el testimonio del cónyuge. Id., 268.

En mérito de lo anteriormente expuesto, forzoso resulta concluir que el privilegio contenido en el Inciso (B) de la Regla 27 de Evidencia cobija exclusivamente al cónyuge-testigo, por lo que el cónyuge-acusado <u>no</u> puede reclamar el privilegio por derecho propio. A tenor con el propio lenguaje del estatuto, es el cónyuge-testigo quien único puede invocar dicho privilegio debido a que es éste el único poseedor del mismo.

En el caso hoy ante nuestra consideración, al peticionario de Jesús Delgado <u>no</u> le asistía el derecho de objetar las declaraciones <u>ni</u> el testimonio de su esposa, ya que ésta es la única que posee el derecho de decidir si declaraba o no en el caso. Ella así lo decidió y declaró.

Lo anterior, sin embargo, <u>no</u> le pone fin al presente caso. <u>Nos resta por determinar si en esta clase de situaciones, el ministerio público viene, o no, en la obligación de advertirle al cónyuge sobre su derecho a testificar, o no, en contra de su marido, antes de que éste preste declaración en la etapa investigativa del caso.</u> En otras palabras, debemos decidir si resulta necesario que el poseedor del privilegio, el cónyuge-testigo, tenga <u>conocimiento expreso</u> del derecho que le asiste a declarar, o no, contra su cónyuge y cuál es el efecto, si alguno, de que los funcionarios del Estado así no lo ilustren al respecto.

Todo proceso judicial, particularmente en el procedimiento criminal, tiene el _fin esencial_ de descubrir la verdad de lo acontecido, razón por la cual no debe exceptuarse o excluirse la debida exposición de los hechos pertinentes, salvo que exista _un interés superior o de mayor jerarquía_ para la sociedad o para la persona que se interpongan a ese fin. El legislador concibió y codificó los privilegios como una excepción, una regla de exclusión de evidencia, ya que éstos, aunque ciertamente obstaculizan, en algunas circunstancias, el esclarecer la totalidad del cuadro fáctico, guardan otro fin de mayor trascendencia. Dicho de otro modo, los privilegios, por su naturaleza y función, impiden el descubrimiento de ciertos actos, hechos o comunicaciones por existir intereses en conflicto que intervienen con esa búsqueda exhaustiva de la verdad. "Los privilegios militan en contra de la búsqueda de la verdad. Estas disposiciones responden a consideraciones de política pública ajenas a este importante objetivo." Emmanuelli, ante, 261.

Es por ello que los privilegios, contenidos en la Reglas de Evidencia, _se interpretan restrictivamente_.[7] Así expresamente lo establece la Regla 35 de Evidencia, ante, la cual reza: "Las Reglas 25 a 32 se interpretarán restrictivamente en relación a cualquier determinación sobre la existencia de un privilegio."[8] A su vez, los privilegios _pueden ser renunciados expresa o implícitamente_, conforme lo establecen las Reglas 33 y 34 de Evidencia, ante, respectivamente.

Con estos principios en mente, en _García Negrón_ v. _Tribunal Superior_, 104 D.P.R. 727, 732 (1976), en el contexto del privilegio médico-paciente, expresamos que venimos en la obligación de interpretar, de manera liberal, la interrogante de si el dueño del privilegio renunció, o no, al mismo.

---

[7] 8 Wigmore on Evidence §2337 (McNaughton rev. 1961).

[8] "Esta medida, adoptada para evitar la extensión indebida de los privilegios, es reflejo de una norma de interpretación firmemente

De esta manera, aun cuando mantenemos y observamos el privilegio, no socavamos el interés cardinal de nuestro entorno jurídico, cual es la dilucidación de casos y controversias a través de un marco fáctico completo.[9]

IV

No obstante lo anteriormente expresado, resulta importante señalar que la Regla 33 de las Reglas de Evidencia establece que:

> Una persona que de otro modo tendría el privilegio de no divulgar un asunto o materia específico, o de impedir que otra persona los divulgue, no tiene tal privilegio respecto a dicho asunto o materia si el tribunal determina que esa persona, o cualquier otra mientras era la poseedora del privilegio, se obligó con otro a no invocar el privilegio, o que sin haber sido coaccionada y con conocimiento del privilegio, divulgó cualquier parte del asunto o materia, o permitió tal divulgación por otra persona. Esta regla no se aplicará a los privilegios establecidos en las Reglas 23 y 24. (Énfasis suplido.)

En el caso de autos, no existe evidencia alguna de que, antes de que la esposa del peticionario --esto es, la dueña del privilegio-- prestara las declaraciones juradas ante los representantes del ministerio fiscal, ésta fuera intimidada, amenazada u obligada a declarar contra su esposo. Resulta meridianamente claro que ella así lo hizo de forma voluntaria. Esto es, se cumple, por decirlo así, con el primero de los dos requisitos exigidos por la referida disposición reglamentaria para que no aplique el privilegio en la situación en que el dueño del privilegio divulga la información.

Ahora bien: ¿significa la frase subrayada --a los efectos de que "...o que sin haber sido coaccionada y con conocimiento del privilegio..."-- que el Estado, antes de tomarle una declaración jurada a un cónyuge que tiene conocimiento personal de unos hechos, viene en la obligación de informarle, o "advertirle", a esa persona sobre la existencia del

---

establecida en Puerto Rico." (citas omitidas) Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 214 (1982).

[9] "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search of truth." United States v. Nixon, 418 U.S. 683, 710 (1974).

privilegio que establece la Regla 27 de Evidencia? <u>Contestamos dicha interrogante en la afirmativa</u>.

Así lo resolvemos en virtud de las normas de hermenéutica a los efectos de que "cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu"[10]; que las "palabras de una ley deben ser generalmente entendidas en su más convincente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces"[11]; que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa[12]; que si el lenguaje de un estatuto es tan inequívoco, que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa[13]; y que los tribunales únicamente estamos autorizados a interpretar las leyes cuando éstas no son claras o concluyentes sobre un punto en particular, cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma, o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere.[14]

Somos del criterio que en relación con el contenido de la antes transcrita Regla 33 de Evidencia, el legislador se manifestó en leguaje claro e inequívoco, no existiendo razón alguna para que este Tribunal interprete, de forma y manera distinta, <u>lo requerido por éste a los efectos de que, de ordinario, para que se entienda renunciada la modalidad del privilegio en controversia, el dueño o poseedor del mismo debe ser advertido o informado, por las autoridades pertinentes, de su derecho al,</u>

---

[10] Artículo 14, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.

[11] Artículo 15, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 15.

[12] <u>Atiles, Adm.</u> v. <u>Comisión Industrial</u>, 77 D.P.R. 16, 20 (1954).

[13] <u>Clínica Juliá</u> v. <u>Srio. de Hacienda</u>, 76 D.P.R. 509, 520 (1954).

[14] <u>Banco Popular</u> v. <u>Municipio de Aguadilla</u>, 144 D.P.R. 651 (1997); <u>Pueblo</u> v. <u>Ortega Santiago</u>, 125 D.P.R. 203, 214 (1990).

<u>y de la existencia del, mismo</u>[15]; obligación con la cual el Estado <u>no</u> cumplió en el caso hoy ante nuestra consideración.

Por las razones expresadas, se expide el auto y se revoca la sentencia emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al foro de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[15] Naturalmente, siempre podrían darse situaciones —las cuales serán resueltas caso a caso, conforme sus hechos particulares— en que se pueda entender, y resolver, que el dueño del privilegio tenía, o debía tener, conocimiento del mencionado privilegio. Meramente, a manera de ejemplo, señalamos la situación en que el dueño o poseedor del privilegio en controversia sea un abogado.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                CC-2001-273    CERTIORARI

José de Jesús Delgado

    Imputado-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de diciembre de 2001

      **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al foro de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.**

      **Así lo pronunció, manda el Tribunal y certifica la Secretaria Interina del Tribunal Supremo.**

**Carmen E. Cruz Rivera**
**Secretaria del Tribunal Supremo Interina**