Voto disidente emitido por el
Juez Asociado Señor Estrella Martínez,
al cual se unen el Juez Presidente Señor Her-nández Denton y el Juez Asociado Señor Kolthoff Caraballo.
Por considerar que debemos evaluar en su totalidad el historial legislativo y que la codificación final elegida por el legislador para preservar el principio de favorabilidad en el Código Penal no puede ser derrotada por una interpre- *304 tación ceñida exclusivamente a otro articulado de esa pieza legislativa, disiento respetuosamente.
Este caso nos permite armonizar por primera vez el Art. 9 y el Art. 308 del Código Penal de 2004 (33 L.P.R.A. sees. 4637 y 4935) respecto a la imposición de la pena más benigna. Esto, debido a que el Art. 9 codifica el principio de favorabilidad y, en consecuencia, dispone que se impondrá la sentencia más benigna, aunque la ley vigente al tiempo de cometerse el delito sea distinta. Mientras que el Art. 308 establece que la conducta realizada con anterioridad a la vigencia del Código Penal de 2004 se regirá por las leyes vigentes al momento del hecho.
I — i
Por conducta ilícita ocurrida el 13 de abril de 2004, mientras se encontraba en vigor el Código Penal de 1974, el Sr. Nelson Negrón Rivera fue acusado por el delito grave de posesión con intención de distribuir sustancias controladas.(1) También se le imputó reincidencia por ha-ber sido sentenciado en dos ocasiones anteriores.(2)
El 1 de mayo de 2005 comenzó la vigencia del Código Penal de 2004. Posteriormente, se celebró el juicio en su fondo y, el 22 de diciembre de 2006, el Tribunal de Primera Instancia sentenció al señor Negrón Rivera de acuerdo con el derogado Código. Esto, a pesar de que el Código Penal de 2004 se encontraba en vigor y establecía una pena más benigna para la reincidencia habitual.
*305 HH H-1
La controversia ante nuestra consideración requiere que dilucidemos si una persona imputada por conducta de-lictiva ocurrida antes de 1 de mayo de 2005, pero que aún se encuentra pendiente de ser sentenciada, puede benefi-ciarse de las disposiciones del Código Penal de 2004 en cuanto a la pena, en virtud del Art. 9 de ese Código.
El Art. 8 del Código Penal de 2004 (33 L.P.R.A. sec. 4636) describe, como regla general, la aplicación prospec-tiva de la ley penal, en particular del Código Penal, de una forma cónsona con la prohibición constitucional de leyes ex post facto. Al aludir a una ley ex post facto nos referimos a la aplicación retroactiva de una ley que agrava para el acu-sado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, Sec. 19.1, págs. 545-549. Pero la prohibición de leyes ex post facto es un concepto distinto a la concesión legislativa para que en determinadas circunstancias se aplique la pena más benigna a un imputado. Por ello, como excepción a la aplicación prospectiva de las leyes penales, la Asamblea Legislativa puede aprobar una disposición más favorable y hacerla retroactiva en cuanto estime apropiado.
Al respecto, el Art. 9 del Código Penal de 2004, supra, dispone lo siguiente:
La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
(a) Si la ley vigente al tiempo de cometerse el delito es dis-tinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.
*306 (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el he-cho, la pena quedará extinguida y la persona liberada, de es-tar recluida o en restricción de libertad. En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. (Énfasis nuestro.(3)
Según el Art. 9 del Código Penal de 2004, supra, y en lo pertinente, la ley penal debe aplicarse retroactivamente si la pena vigente al momento de la sentencia es menor que la establecida cuando se cometió el delito. Véase L.E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Pubs. J.T.S., 2007, pág. 55. En la doctrina se reconoce que “si la ley más favorable es promulgada con posterioridad a los hechos pero antes del juicio, deberá ser aplicada en la sen-tencia que se dicte”. F. Muñoz Conde, Derecho Penal: Parte General, 7ma ed., Valencia, Ed. Tirant lo Blanch, 2007, pág. 140.
Claro está, al ser la aplicación retroactiva de las dispo-siciones legales que beneficien al imputado una prerroga-tiva de la Asamblea Legislativa, como lo sería un tipo que reúna elementos específicos más difíciles de cumplir para el delito en cuestión, el legislador puede delimitar la dispo-sición particular según su parecer. Es por esto que la Asamblea Legislativa incluyó el Art. 308 del Código Penal de 2004, supra, que dispone una cláusula de reserva par-cial, la cual, en lo pertinente, establece que “[l]a conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí dero- *307 gado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho”. (Enfa-sis nuestro.)
La Asamblea Legislativa aprobó la expresión palmaria de que la “conducta” que constituyera delito con anteriori-dad a la vigencia del Código Penal de 2004 se regiría por las leyes vigentes al momento del hecho. El texto claro de la ley es la expresión por excelencia de la intención legis-lativa, particularmente en el campo penal. Pueblo v. Jesús Delgado, 155 D.P.R. 930, 941 (2001); Pueblo v. Rexach Benitez, 130 D.P.R. 273, 302 (1992). El sujeto indiscutible del primer párrafo del Art. 308, supra, es la “conducta”, según lo dispuesto por el legislador, por lo que tal párrafo va dirigido a establecer una cláusula de reserva parcial al respecto. Esto es, el único asunto en el párrafo aludido para el cual el legislador prohibió la aplicación retroactiva del Código Penal de 2004 es para la “conducta” realizada con anterioridad a la vigencia de ese Código.
Ahora bien, ¿qué significa “conducta” en el Art. 308? ¿Significa “pena”? ¿O se refiere a las acciones u omisiones que constituyen el tipo delictivo según la ley penal vigente antes de la entrada en vigor del Código Penal de 2004?
El Art. 14 del nuevo Código, 33 L.P.R.A. sec. 4642, no define la palabra “conducta”, por lo que debemos interpre-tarla “según el contexto y el significado sancionado por el uso común y corriente”. Art. 13 del Código Penal de 2004 (33 L.P.R.A. sec. 4641). Además, debemos tener presente que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado y li-beralmente en cuanto lo favorece. Pueblo v. Flores Flores, 181 D.P.R. 225 (2011); Pueblo v. Negrón Caldero, 157 D.P.R. 413, 423 (2002); Pueblo v. Rodríguez Jiménez, 128 D.P.R. 114, 119 (1991). Asimismo, las disposiciones de una ley deben ser examinadas e interpretadas de modo que conduzcan a resultados armoniosos. Pueblo v. Rivera Mar *308 tell, 173 D.P.R. 601, 612 (2008); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 548 (1999).
La Real Academia Española define “conducta” como la “manera que una persona se comporta en su vida y accio-nes”, y como el “conjunto de las acciones con que un ser vivo responde a una situación”. Real Academia Española, Diccionario esencial de la lengua española, Madrid, Ed. Es-pasa-Calpe, 2006, pág. 382. También se define como la forma y manera en la que el ser humano gobierna su vida y dirige sus acciones. I. Rivera García, Diccionario de Tér-minos Jurídicos, 2da ed. rev., New Hampshire, Ed. Equity, 1989, pág. 49. La conducta supone alguna acción u omisión. Y para que exista conducta antijurídica penal se requiere un acto cometido u omitido que viole alguna ley que lo prohíba u ordene. El comportamiento humano es una exigencia de los tipos penales. S. Mir Puig, Derecho Penal: Parte General, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 177. Así, pues, en el derecho penal el término “conducta” es la primera condición para la imputación del resultado típico y sin ella este no puede imputársele a nadie. íd., pág. 178. Sin conducta no hay configuración de delito alguno. El fundamento es sencillo. Cuando hay au-sencia de conducta humana no solo falta la tipicidad penal, sino también la imputación personal del hecho, a saber: el delito. Id.
La pena, en cambio, es la consecuencia jurídica prima-ria de la conducta considerada como delito. Véase Mir Puig, op. cit., pág. 663. Dicho de otra manera, es el castigo para la conducta antijurídica penalmente típica. Por ello, resulta evidente que “conducta” y “pena” son términos distintos.
El trasfondo histórico de la cláusula de reserva parcial ilustra el alcance del Art. 308, supra. A este articulado le preceden las cláusulas de reserva del Código Penal de 1974 —Arts. 281 y 282— que el legislador justipreció que debían ser revisadas. El entonces Art. 281 disponía lo siguiente:
*309 La promulgación de este Código no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal. (Enfasis nuestro.) 33 L.P.R.A. ant. sec. 4625.
Nótese que el lenguaje empuñado por esta cláusula de reserva derogada incluye el término “castigar”, el cual en conformidad con tal Código guarda inextricable relación con la pena. Véase el Art. 60 del Código Penal de 1974 (33 L.P.R.A. sec. 3284), derogado. Por lo tanto, esta derogada cláusula de reserva prohibía de forma indubitada la apli-cación retroactiva de las nuevas penas que disponía ese Código. Pero, además, el Código Penal de 1974 contenía otra cláusula de reserva en su Art. 282 para impedir que pudiera invocarse retroactivamente el principio de favora-bilidad de su Art. 4. El Art. 282 del derogado Código esta-blecía lo siguiente:
Las disposiciones del Artículo 4 [principio de favorabilidad] de este Código se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia. 33 L.P.R.A. ant. sec. 4626.
De lo anterior surge claramente que el legislador no tuvo intención alguna de que el principio de favorabilidad que en aquel entonces introducía, el cual aludía a las pe-nas, pudiera beneficiar a quienes cometieran algún delito según la ley anterior, pero que fueran sentenciados con posterioridad a la vigencia del Código Penal de 1974.
El historial legislativo de la cláusula de reserva del Art. 308 del Código Penal de 2004, supra, refleja la preocupa-ción de que se entendiera, equivocadamente, que los ele-mentos específicos del tipo particular del nuevo Código que fueren más beneficiosos, aplicarían retroactivamente a las personas imputadas o sentenciadas según el Código Penal de 1974. El Informe de la Comisión de lo Jurídico del Se-nado de 22 de junio de 2003 sobre el P. del S. 2302 reconoce esta situación y, por ello, expresa que la intención del le-gislador es que el Código Penal de 2004 aplique a delitos *310 cometidos con posterioridad a su vigencia, para evitar que se suprimieran los procedimientos ya iniciados. Esto es, para impedir escenarios de impunidad, producto de un va-cío de legislación. (4)
Finalmente, el primer párrafo del Art. 308 del Código Penal de 2004 quedó codificado de la manera siguiente:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y libe-rar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Enfasis nuestro.) 33 L.P.R.A. sec. 4935.
Nótese que el legislador no estimó apropiado incluir en la redacción final del primer párrafo de la cláusula de re-serva parcial del Art. 308 la palabra “delito”, sino que em-puñó el término “conducta”. Eso significa algo. Pero la pa-labra “delito” no fue lo único que la Asamblea Legislativa excluyó. Esto también significa algo. En el ejercicio de sus prerrogativas el legislador eliminó toda referencia en el nuevo Código a la palabra “castigo” utilizada en el Art. 281 del Código Penal de 1974, supra, el cual aludía a penas. Tampoco incorporó reserva alguna similar a la del Art. 282 del Código derogado, supra, para impedir que pudiera in-vocarse retroactivamente el principio de favorabilidad. El legislador no opera en el vacío y difícilmente puede argu- *311 mentarse que la redacción empleada en la cláusula de re-serva del Art. 308 respondió a un ejercicio de abstracción.
En Pueblo v. González, 165 D.P.R. 675, 682 (2005), el peticionario alegó que debían aplicársele retroactivamente a través del Art. 9 del nuevo Código, supra, “las disposicio-nes ‘más benignas’, en cuanto a la definición de asesinato estatutario”. (Enfasis nuestro.) Según adujo, la nueva de-finición abolía la doctrina del felony murder rule y la inter-pretación del citado Art. 308 tenía el efecto de suprimir la definición anterior. Id. En aquel entonces, resolvimos que el Código Penal de 2004 no suprimió el delito de asesinato estatutario tipificado en el Código Penal de 1976. Esto, pues el Art. 308 del nuevo Código disponía que procedía encausar la conducta tipificada como delito en el derogado Código que fuera realizada bajo la vigencia de este. No estaba ante nuestra consideración si una persona que co-metiera algún acto delictivo antes de la vigencia del nuevo Código, pero que fuera sentenciada con posterioridad a esta, podía beneficiarse de la pena más benigna estable-cida por el Código Penal de 2004. Así, pues, nuestro análi-sis atendió el efecto de la cláusula de reserva del Art. 308 del nuevo Código sobre la conducta según definida como delito en el Código Penal de 1974. Ese es el único alcance vinculante de nuestras expresiones.
De hecho, luego de la decisión de este Tribunal en Pueblo v. González, supra, la Asamblea Legislativa rechazó aprobar legislación para que el principio de favorabilidad del Art. 9 del nuevo Código, supra, aplicara prospectivamente. Me-diante el P. de la C. 2076 de 10 de octubre de 2005, 15ta Asamblea Legislativa, 2da Sesión Ordinaria, algunos legis-ladores propusieron enmendar el Art. 9, supra, para dispo-ner, por primera vez en el nuevo Código, que tal artículo solo tendría carácter prospectivo. Esto, mediante la inclusión de un último párrafo a esa disposición, a saber:
En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. Las disposiciones de este Artí- *312 culo se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia. (Énfasis en el original.) Id.
Asimismo, propusieron que el primer párrafo del Art. 308 estableciera que la promulgación del Código Penal de 2004 no era óbice para imponer las penas del derogado Código para conducta ocurrida antes de la vigencia del nuevo Código. Esto, de la manera siguiente:
La promulgación de este Código no constituye de sí impedi-mento para acusar o perseguir y castigar un hecho ya come-tido en violación a las disposiciones del anterior Código Penal aquí derogado o de cualquier otra ley especial de carácter penal. (Énfasis nuestro.) Véase P. de la C. 2076, supra.
No obstante lo anterior, estas propuestas no se convir-tieron en ley. En cambio, fueron objeto de un informe que no recomendó su aprobación. Véase el Informe de la Comi-sión de lo Jurídico y Seguridad Pública del Senado sobre el P. de la C. 2076 de 9 de septiembre de 2008, supra. Por lo tanto, resulta forzoso concluir que el legislador, aunque tuvo la oportunidad, ejerció su prerrogativa de no condicio-nar ni limitar la favorabilidad retroactiva de las penas en el nuevo Código.
Como Juez estoy impedido de limitar el Art. 9 y extender el alcance del Art. 308 del Código Penal de 2004, supra, más allá de lo que la Asamblea Legislativa dispuso. El trasfondo histórico y legislativo del Art. 308, más la redac-ción elegida por la Asamblea Legislativa para la cláusula de reserva del Código Penal de 2004, y el significado san-cionado por el uso común y corriente, me obliga a concluir que la palabra “conducta”, en el contexto del Art. 308, se refiere únicamente al acto cometido u omitido en violación de la ley penal derogada o de cualquier ley especial penal. Esto es, a los elementos constitutivos del delito.
De manera alguna el Art. 308 del Código Penal de 2004, supra, impide la aplicación retroactiva del principio de fa-vorabilidad de su propio Art. 9, supra, en cuanto a la pena *313 más beneficiosa para aquellas personas que cometieron al-gún delito antes de la entrada en vigor de ese Código, pero que fueran sentenciadas con posterioridad a tal fecha. La pena no es una conducta en sí, sino la consecuencia jurí-dica de ésta.
Si el legislador hubiera querido reservar la aplicación retroactiva del principio de favorabilidad, habría incorpo-rado un lenguaje similar al del Art. 281 del derogado Có-digo o una cláusula como la del Art. 282 de este, supra, que limitara la aplicación en el tiempo de este principio. Pero mediante el Art. 308 del nuevo Código, supra, la Asamblea Legislativa, en el ejercicio legítimo de sus facultades, jus-tipreció que la definición de lo que constituye conducta pu-nible se regiría por el Código Penal de 1974, mientras que la pena que debe aplicarse sería la del nuevo Código, siem-pre que fuera la más benigna. Así lo establecen claramente los Arts. 9 y 308 del Código Penal de 2004 y así surge del rechazo elocuente de la Asamblea Legislativa a restringir la retroactividad de la favorabilidad de la pena. El texto claro de la ley es la expresión por excelencia de la intención legislativa. Pueblo v. Jesús Delgado, supra; Pueblo v. Rexach Benitez, supra. Donde dice conducta no dice pena.
Recuérdese que la preocupación del legislador residía en que los elementos específicos del tipo particular del nuevo Código que fueren más beneficiosos aplicaran retroactiva-mente a las personas imputadas o sentenciadas en confor-midad con el Código Penal de 1974. Ello hubiera creado múltiples escenarios inexplorados que podrían haber afec-tado el procesamiento efectivo de las causas en curso.
La intención del legislador no era suprimir los procedi-mientos ya iniciados. Con el lenguaje empleado en el Art. 308 del nuevo Código, supra, la Asamblea Legislativa aten-dió tal problema y garantizó la continuidad de los casos criminales, dejando incólume la definición anterior de los delitos, pero permitiendo la aplicación retroactiva de la pena más favorable. ¿Cómo limitar la nueva valoración le- *314 gislativa de lo que constituye una pena apropiada para la conducta prohibida, cuando el propio legislador dejó a un lado las reservas del pasado y dio paso al principio de fa-vorabilidad?
Aún bajo la tesis mayoritaria resulta inescapable apli-car la pena más benigna. Si fuera cierto que en virtud del Art. 308 del nuevo Código, supra, la controversia ante nos se rige en su totalidad por el Código de 1974, entonces habría que aplicar el principio de favorabilidad del Art. 4 del Código de 1974, supra, en cuanto a la pena más be-nigna que fuera aprobada con posterioridad a la vigencia de ese Código. ¿Acaso el Código Penal de 2004 no es una ley posterior que, en este caso, provee una pena más be-nigna? Entonces, ¿dónde queda el principio de favorabili-dad de la pena del Art. 4 del Código de 1974 que ordenó que si la ley posterior era más benigna sería esa la que tenía que ser aplicada en cuanto a la pena?
En suma, es mi criterio que la cláusula de reserva del Art. 308 va dirigida únicamente a impedir que se aplique retroactivamente la nueva definición de lo que constituyen los elementos del delito a conductas antijurídicas —no a sus consecuencias— realizadas antes de la vigencia del Có-digo Penal de 2004. Asimismo, que en virtud de su Art. 9 el nuevo Código permite que se imponga la pena más benigna a las personas pendientes de sentenciar por conducta anti-jurídica ocurrida antes de su vigencia.
III
Por los fundamentos expuestos, respetuosamente disiento del criterio mayoritario. Expediría el auto y resolve-ría según lo aquí intimado.

 Art. 401(a)(2) de la Ley de Sustancias Controladas de Puerto Rico (Ley de Sustancias Controladas), 24 L.P.R.A. sec. 2401.

 Una por tentativa de recibo y transportación de bienes apropiados ilegal-mente según el Código Penal de 1974 y, otra, por seis cargos de posesión de narcóti-cos según la Ley de Sustancias Controladas.

 El Código Penal de 1974 reconoció por primera vez este principio. El Art. 4 del derogado Código establecía el principio de favorabilidad de la manera siguiente:
“Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
“Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
“Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.
“En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho.” 33 L.P.R.A. ant. see. 3004.

 El informe expresa lo siguiente:
“Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. de la S. 2302 para que en el Artículo 30[8] se elimine la oración ‘[s]in embargo, las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.’ La intención del legislador es que este Código aplique a delitos cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito.” Informe de la Comisión de lo Jurídico del Senado de 22 de junio de 2003 sobre el P. de la S. 2302, 14ta Asamblea Legisla-tiva, 5ta Sesión Ordinaria, pág. 67.